IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

TREMEBIO, INC.,
    *Plaintiff,*

   v.       :   **CIVIL NO. 26-3747**

THOMAS KIM,
    *Defendant.*

**Scott, J.**                **July 22, 2026**

## MEMORANDUM

Before the Court are Plaintiff TremeBio Inc.'s Motion for a Preliminary Injunction (ECF No. 6) and Defendant Thomas Kim's Motion for a Preliminary Injunction (ECF No. 15). For reasons explained below, the Court grants Plaintiff's Motion and denies Defendant's Motion.

### I. Background

Thomas Kim and Dr. Susan Thomas co-founded TremeBio, Inc., a company focused on inventing and developing drug-delivery technology to improve therapy for lymphatic maladies. ECF No. 1 ¶¶ 20, 24 (hereinafter "Compl." or "Complaint"). At TremeBio's formation, Thomas owned the majority of the company's shares, and Kim owned the minority remainder of the shares. *Id.* ¶ 25. As a testament to the company's promise, the Advanced Research Projects Agency for Health ("ARPA-H") awarded in February 2026 a $22 million contract to the Georgia Institute of Technology ("Georgia Tech"), where Thomas serves as faculty, and to TremeBio as a sub-awardee to support the company's efforts to develop and commercialize its technology. *Id.* ¶¶ 21–2.

By early 2026, TremeBio suspected that Kim had abused his position at the company, including by furtively awarding himself stock options and by attempting to hire his son who apparently was not qualified for a role at the company. *Id.* ¶ 29. To remedy this situation, Thomas

asked Kim to terminate the extant voting agreement, to expand the board of directors, and to add herself as a director. *Id.* ¶ 30. Kim agreed to these changes. *Id.* ¶ 31. Thomas then became a director and also appointed Dr. Jeffrey Hubbell as the third director. *Id.* ¶¶ 31–2.

On March 24, 2026, TremeBio's board of directors placed Kim on interim leave while the Company formed a special committee to investigate whether Kim had abused his position at the company. *Id.* ¶¶ 33, 37. While on leave, the board board instructed Kim to return access to the company's bank accounts, funds, books and records, trade secrets, confidential financial information, and website domain, all of which were apparently in Kim's sole possession. *Id.* ¶¶ 35, 75–77. While Kim was on interim leave and informed that he may no longer represent the company, TremeBio hired appointed Dr. David Francis to serve as the interim CEO. *Id.* ¶¶ 34, 38.

Kim refused to comply with TremeBio's request to return the company's materials to which only Kim had access. *Id.* ¶¶ 39–45. Additionally, Kim continued to hold himself out as the CEO. *Id.* ¶ 48. As one example, Kim apparently attempted to exercise—unilaterally and without consulting TremeBio—a licensing option with a subsidiary of Georgia Tech. TremeBio alleges that this attempt placed additional funding at risk and damaged the company's relationship with the university. *Id.* ¶¶ 53–58.

On May 15, 2026, TremeBio formally terminated Kim's tenure at the company and demanded that he return the company's materials and cease holding himself out as a representative of the company. *Id.* ¶ 61. Kim refused, continuing to maintain sole access to essential company information and to represent himself as the CEO on the company's website (to which he also maintained sole access).

Kim's version of these events adds more color to the picture. Kim, for instance, states he only signed the agreement to expand the board and to restructure the voting agreement because,

2

had he not done so, Thomas would have left TremeBio. ECF No. 15-2 ¶ 7. Moreover, Kim's refusal to comply with the company's demands stems from his belief that his removal and termination was procedurally deficient and unlawful, which means, on his view, that he remained the CEO as the company. *See, e.g.*, Transcript of Prelim. Inj. Hearing, 59:24–60:4. Kim's allegations suggest that TremeBio (principally through Susan Thomas) purloined his equity in the company right before TremeBio's value increased dramatically (through, among other things, receiving a large ARPA-H award) by manufacturing pretextual reasons to remove Kim from the company and to cash out his shares. *See, e.g.*, ECF No. 11 ¶¶ 14–29.

## II.    Procedural Posture

On May 12, 2026, David Francis, Susan Thomas, Jeff Hubbell and TremeBio, Inc. (as a nominal defendant) removed to federal court an action initiated by Thomas Kim in which Kim alleges that the defendants orchestrated his removal from TremeBio shortly after the company received the $22 million ARPA-H grant. *Kim v. Thomas et al.*, 26-cv-3215 (E.D. Pa.), ECF No. 1-3 at 6. While that action was in state court, Kim had filed a motion for a temporary restraining order, seeking to preserve his stock options, preserve his access to the company records, and to enjoin defendants from replacing his board seat. *See, e.g.*, *Kim v. Thomas et al.*, 26-cv-3215 (E.D. Pa.), ECF No. 15-1, ¶¶ 14–21. Kim, however, did not appropriately refile the motions in federal court after defendants removed them, and there was consequently no motion for a temporary restraining order pending before the Court. In a telephonic status conference held on June 3, 2026, the Court explained this procedural error to Kim.

On June 2, 2026, TremeBio filed a motion for a temporary restraining order in this action. ECF No. 6. After a telephonic status conference, the Court granted TremeBio a temporary restraining order and ordered Kim to return company materials and to refrain from representing himself as having authority to act on TremeBio's behalf. ECF No. 10 at 1–2. The Court held that

the temporary restraining order would remain in effect until the Court held a hearing on TremeBio's motion for a preliminary injunction. *Id.* at 2. Recognizing that the same set of facts ground Kim's claims against defendants in the other action, the Court permitted Kim to file his own motion for a preliminary injunction in this action. *Id.* at 2. The Court did not consolidate the cases because a motion to remand in the other action remains pending and was not yet ripe for disposition. Kim filed his own motion for a preliminary injunction in this action on June 9, 2026. ECF Nos. 15, 16. On June 26, 2026, the Court held oral argument on both motions for a preliminary injunction.

### III.    Legal Standard

Preliminary injunctive relief is an extraordinary remedy that requires the Court to exercise its discretion carefully. *Delaware State Sportsmen's Assoc. Inc. v. Delaware Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 197–99 (3d Cir. 2024), *cert. denied sub nom. Gray v. Jennings*, 145 S. Ct. 1049 (2025). Movants are entitled to preliminary injunctive relief when they establish that (i) they are likely to succeed on the merits, (ii) that they are likely to suffer irreparable harm absent the extraordinary relief, (iii) that the balance of equities tips in their favor, and (iv) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "The first two factors are the 'most critical.'" *Delaware State Sportsmen's Assoc.*, 108 F. 4th at 202 (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 971 (2009)).

### IV.    Discussion

A. Kim Does Not Establish Irreparable Harm

To establish irreparable harm, "a plaintiff must demonstrate harm [that] cannot be redressed by a legal or an equitable remedy following a trial." *Acierno v. New Castle Cnty.*, 40 F.3d 645, 653 (3d. Cir. 1994) (citation modified). Money damages and economic injury rarely qualify as irreparable harm. *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801

4

(3d Cir. 1989); *see also Morton v. Beyer*, 822 F.2d 364, 372 (3d Cir. 1987) (holding that, for purposes of a preliminary injunction, the "injury must be of a peculiar nature, so that compensation in money cannot alone atone for it.") (quotation omitted); *Kataria et al. v. Bokhari et al.*, 2025 WL 2312326, at *3 (E.D. Pa. Aug. 11, 2025) ("[e]conomic loss does not constitute irreparable harm") (citation modified).

Kim's alleged harms are all monetary. The relief he seeks uniformly concerns preserving his interest and equity in the company. *See, e.g.*, ECF No. 15 ¶ 2. Kim has identified no persuasive case law in support of the proposition that his alleged harms are irreparable.[1] And, as Defendants point out, there is ample case law to suggest that shareholders, such as Kim, are not entitled to injunctive relief when pursuing relief related to the alleged diminution in value of their holdings. *See, e.g., Enterra Corp. v. SGS Associates*, 600 F. Supp. 678, 692 (E.D. Pa. 1985). Accordingly, the relief that Kim seeks is essentially monetary, which means that his putative harms are not irreparable. Because Kim has failed to meet this essential element to obtaining preliminary injunctive relief, his motion will be denied.

B. TremeBio Has Established A Likelihood Of Success On The Merits on Its Trade Secrets Claims.

To establish a likelihood of success on the merits, TremeBio must show that it can win on the merits for at least one of its claims and its showing must be "significantly better than negligible

---

[1] Kim's motion for a preliminary injunction cited to several cases that appeared to support a finding of irreparable harm. But, after TremeBio informed the Court that those cases were likely hallucinations generated by artificial intelligence or gross overstatements of the holdings of extant cases, ECF No. 18 at 16–18, Kim filed a notice of errata, indicating that one citation included a fabricated quotation and that two other citations were misleading. ECF No. 19 at 1–2. Kim's original motion included a signed certification, as required by the Court's Policies and Procedures, that states Kim "certife[d] that he has independently reviewed each and every citation to legal authority . . . [and] each such citation has been verified as accurate." The Court now knows that this certification was patently false.

The Court remains extremely frustrated with Kim's conduct here. But, in a moment of grace, the Court opted not to sanction Kim. He is hereby warned that any additional hallucinations or misstatements in his filings and any misrepresentations to the Court through false certifications will result in a show cause order about why sanctions should not be entered against him.

but not necessarily more likely than not." *Reilly v. City of Harrisburg*, 858 F. 3d 173, 179 (3d Cir. 2017). TremeBio has cleared that hurdle most clearly on its trade secrets claim.

Under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 et seq., TremeBio must show:

> (1) The existence of a trade secret, defined generally as information with independent economic value that the owner has taken reasonable measures to keep secret; (2) that 'is related to a product or service used in, or intended for use in, interstate or foreign commerce; and (3) the misappropriation of that trade secret, defined broadly as the knowing improper acquisition, or use or disclosure of the secret.

*Oakwood Labs. LLC v. Thanoo*, 999 F.3d 892, 905 (3d Cir. 2021) (citation modified).

TremeBio has shown all three elements for purposes of establishing a likelihood of success on the merits. The trade secrets comprise financial documents, nonpublic scientific and technical materials, and information relating to potential strategic partnerships as the company grows. ECF No. 6-2 at 14–15. TremeBio also took reasonable measures to keep this information secret, namely by storing these documents in a password-protected Dropbox folder. *Id.* at 15. TremeBio satisfies the second element because the trade secrets, which inform the success of TremeBio's technology that aims to treat patients nationally and globally, are clearly intended for use in interstate or foreign commerce. *Id.* TremeBio meets the third element because Kim has admitted that he maintained sole access to the password-protected Dropbox folder after he was terminated (although he did so out of the belief that he was improperly terminated), which amounts to a knowing and improper acquisition of the trade secrets. *See, e.g.*, Prelim. Inj. Hearing Trans. 84:14–85:17.

Accordingly, TremeBio has made a sufficient showing that it is likely to succeed on the merits of its trade secret claim.

C. TremeBio Has Established Irreparable Harm

Kim's post-termination conduct endangered TremeBio's relationship with Georgia Tech, confused potential TremeBio partners and investors about the company's leadership, and jeopardized the company's ability to function by withholding access to confidential and essential trade secrets. Were this conduct to continue, TremeBio may fail as a company and its trade secrets may be improperly divulged to unknown entities. That is the type of particularized harm for which "money alone cannot atone." *Morton*, 822 F.2d at 372. Accordingly, the Court finds that TremeBio has established that it faces irreparable harm absent a preliminary injunction.

D. The Balance of Equities and the Public Interest Favor TremeBio

Preliminary injunctive relief also requires the Court to look to the balance of equities, in which the Court balances the harm to TremeBio should an injunction not issue against the harm to Kim should an injunction issue. *Reilly*, 858 F.3d at 178 (citing *Hoosier Energy Rural Elec. Coop., Inc. v. John Hancock Life Ins. Co.*, 582 F.3d 721, 725 (7th Cir. 2009) (Easterbrook, C.J.)). The balancing here is straightforward: the potential harm to Kim is minimal because he is not legally entitled to possess the trade secrets while the potential harm to TremeBio is existential because, absent an injunction, the inability to access its trade secrets and financial information could spell the end of the company.

The Court also considers the public interest when determining whether a preliminary injunction is appropriate. *Id.* at 176. Kim suggests that the public interest weighs against an injunction because he filed his action first, he has a live corporate-governance dispute, and an injunction would threaten the "integrity of federal-grant administration." ECF No. 17 at 22. The Court finds none of these reasons persuasive. Kim's first-filed point refuses to recognize the error in failing to refile the emergency motions in federal court and refuses to recognize that the Court gave Kim permission to file his own preliminary injunction motion that the Court heard at the

7

same time. The Court is not exactly sure what animates Kim's point about a corporate-governance dispute, but a preliminary injunction will not upset Kim's ability to continue to litigate his claims. Finally, Kim's conduct, not a Court-ordered injunction, is what has threatened most the administration of TremeBio's ARPA-H grant. The Court therefore does not find that the public interest weighs against an injunction.

Instead, the public interest tilts heavily in favor of an injunction. TremeBio is working to develop drug-delivery technology that may increase the therapeutic efficacy for certain lymphatic disorders. An injunction that preserves TremeBio's operations as the Parties litigate their claims will allow TremeBio to perform its work with minimal interruptions, all of which accrues a potentially significant benefit to the public.

## V.    Conclusion

Preliminary injunctive relief is an extraordinary remedy. Only TremeBio has met the elements necessary to receive it. Nevertheless, the Court reminds the Parties that its view of the merits—although improved by an informative hearing—remains only partial given the early stage of this action and the lack of meaningful discovery. Kim may ultimately be correct that he is the victim of a scheme to deprive him of valuable equity in the company he co-founded on the eve of the company receiving a multimillion-dollar grant. But his chance to prove it and his chance to receive relief will proceed according to the rhythm of traditional litigation because the type of relief that Kim seeks is not the type appropriate for a preliminary injunction.

An appropriate order will follow.